IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL BRANDON MILLETT, WILLIAM MORGAN, and BRANDON MENDOZA, on behalf of themselves individually and all other similarly situated employees, <br><br> *Plaintiffs*, <br><br> vs. <br><br> SHAMROCK CABINET & FIXTURE CORPORATION, <br><br> *Defendant*. | Case No. 4:21-cv-00635-GAF |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL AND SUGGESTIONS IN SUPPORT**

Plaintiffs Brandon Millett, William Morgan, and Brandon Mendoza ("Named Plaintiffs"), on behalf of themselves and all other similarly situated employees seek, and Defendant Shamrock Cabinet & Fixture Corporation ("Defendant") does not oppose, final approval of the Parties' Settlement Agreement for their Rule 23 and FLSA Classes, and a finding that the Settlement is Fair, Reasonable, and Adequate. In support of their Motion, the Plaintiffs state as follows:

**I.  Procedural History and Settlement Overview**

Plaintiffs filed their Unopposed Motion for Certification of Class and Preliminary Approval of Settlement Agreement [Doc. #60] on March 15, 2023. That Motion outlines the detailed history of this case. This Court took up that Motion at a hearing on April 27, 2023. On May 4, 2023, the Court issued an Order granting the Motion and preliminarily finding the proposed settlement agreement to be fair, reasonable, and adequate. [Doc. #65].

Since that time, the Parties have worked with the Settlement Administrator, RG/2 Claims Administration, LLC ("RG/2") to exchange the necessary Class data to administer the settlement

1

notice and claims process, calculate Class Members' eligible settlement payments, and respond to Class Member inquiries about their rights and eligibility under the Settlement Agreement. *See* **Ex. A**, Sutor Decl.

The total value of the Parties' Settlement Agreement, inclusive of attorneys' fees and expenses, is $1,250,000.00. The Net Settlement Fund to Class Members, after fees and expenses, is $875,000.00. Of that, Plaintiffs have requested that the Named Plaintiffs receive service awards of $10,000.00 for Plaintiff Brandon Millett, and $5,000.00 each for Plaintiffs Brandon Mendoza and William Morgan. If those amounts are approved, the remaining $855,000.00 is available for distribution to the Class. Following the notice and claims process, 1 of 201 prospective Class Members have opted out of the Rule 23 class. The remaining 200 Class Members have received payments of $125.00 each as Rule 23 Class Members, for a total of $25,000. Additionally, 158 of 201 prospective Class Members have opted in to the FLSA Class, and have collectively asked to receive at least $741,222.26 under the Settlement Agreement. This means that eligible Class Members have claimed at least 89.85% of the Net Settlement Fund. Additionally, pursuant to the Parties' agreement that each Class Member may be entitled to up to three times their calculated damages, *See* Doc. #60-1, 100% of the Net Settlement Fund has been claimed by the Class, which is ready for final disbursement upon this Court's approval.

## II. The Parties Provided the Best Notice Practicable to Class Members

Due Process requires that absent class members receive the "best practicable" notice, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (citations removed); *See* Fed. R. Civ. P. 23(c)(2)(B). The District Court has broad discretion to direct and determine the sufficiency of notice of the proposed

settlement, subject to the process being "reasonable enough to satisfy due process." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995). Here, the Court vetted and approved the Parties proposed Notice for FLSA and Rule 23 Class purposes in connection with preliminary settlement approval. The Court found that "the Notice[] meets the requirements of Rule 23, the Fair Labor Standards Act, and due process, that it is the best notice practicable under the circumstances, and that it shall constitute valid, due, and sufficient notice to Class Members in full compliance with the requirements of applicable law." [Doc. #65 ¶ 10].

Following the Court's May 4, 2023 Order, the Parties worked with the approved Settlement Administrator, RG/2, to distribute Notice as directed. On May 4, the Parties sent RG/2 copies of the Court's Order preliminarily approving the settlement, as well as Word copies of the Notice and Consent to Join, and their most up-to-date contact information for the 201 prospective Class Members. In the following weeks, the Parties worked with RG/2 to sort out final details regarding the Notice packets, and updated prospective Class Members' last known addresses as appropriate. Ultimately, a total of 201 notice packets were mailed out on June 6, 2023. *See* Sutor Decl. ¶ 6. Consents to join the settlement were initially due on August 4, 2023.

Of those 201 mailed notice packets, 25 were initially returned as undeliverable by the Post Office. On July 21, 2023, the Court permitted an extension of time to August 18, 2023 for those class members to opt in whose notice packets had initially been returned as undeliverable. One of the 25 mailers was returned with a forwarding address, and RG/2 ran a skip trace address search to find updated addresses for the other 24 prospective Class Members. *See* Sutor Decl. ¶ 8. Notice packets to the 25 individuals whose initial mailers were returned as undeliverable were re-issued by the end of July.

The mailed notice packets provided instructions on how Class Members could object to the settlement [Doc. #60-2 ¶ 10]. As of this filing, neither RG/2 nor counsel for either Plaintiffs or Defendant have received any objections, and the time to object to the settlement has expired. The notice packets also provide instructions on how Class Members could exclude themselves from the settlement. As of August 22, 2023, RG/2 has received one exclusion. *See* Sutor Decl. ¶ 12.

RG/2 has received a total of 87 Consents to Join.[1] An additional 71 Class Members have opted to join the Collective Class by cashing the initial $125 check that was sent with the notice packet.[2] Accordingly, following the notice and claims process, only one of 201 prospective Class Members have opted out of the Rule 23 Class (99.5% participation rate). 158 of the 201 prospective Class Members have opted to join the FLSA Collective Class (78.6% participation rate). In all, Class Members who have elected to participate in the Settlement in some way would be entitled to 89.85% of the $875,000 Net Settlement Fund (including $20,000 in requested service awards to the named Plaintiffs, $25,000 in payments to the 200 Rule 23 Class Members who did not exclude themselves from the settlement, and a minimum of $741,222.26 in payments to the 158 Class

---

[1] Shortly before this filing, two additional class members contacted RG/2 and Plaintiff's counsel regarding late addition to the Class. One, D.D. indicated that he just received his mailed check and notice packet. D.D. indicated that he wanted to opt in, but that the deadline to do so had expired. Another, J.R., had received an extension of time to August 18 to opt in after his initial mail was returned undeliverable. On August 24, Class Counsel received a signed consent from J.R. in the mail that was dated August 10. In addition to Final Approval, Plaintiffs request, and Defendant does not oppose, for these Class Members only, allowance of these two class members to opt in to the settlement out of time. Should they be added, the above-cited numbers would change to 160 opt-ins (79.6% participation rate) resulting in a minimum of $742,355.50 in payments to the FLSA Collective Class. The Class would then be entitled to a minimum of 90.0% of the Net Settlement Fund.

[2] Per the Notice of Settlement that was mailed to all Class Members, "If you do <u>not</u> want a payment from this Agreement, you need to return the enclosed check . . .If you deposit the [initial $125 check] into an account, you will have agreed to the settlement, and any claims you may have that were asserted in this litigation will be resolved." *See* Doc. #60-2 ¶ 8. Based on this language, the Parties have agreed that any Class Member who cashed their initial $125 check has opted in to the full settlement and is entitled to a further payment up to their calculated damage should the settlement be approved.

Members who opted to participate in the FLSA Collective Class). Additionally, pursuant to the Settlement Agreement, each Collective Class Member may be entitled to an award of up to three times their calculated damage. Based on that provision, 100% of the Net Settlement Fund has been claimed by the Collective Class and is ready for distribution.

Based on the above, the Parties' notice plan, as approved by the Court and implemented by the Settlement Administrator, constituted the best practicable notice to inform Class Members of their rights under the Settlement Agreement.

**III.     The Terms of the Rule 23 Settlement are Fair, Reasonable, and Adequate**

Rule 23(e) "effectively places the district court in a fiduciary role vis-à-vis the absent class members." *McClean v. Health Systems, Inc.*, No. 6:11cv3037, 2015 WL 12426091 at *3 (W.D. Mo. Jun 1, 2015) (citing *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005)). Before approving a settlement, the district court must consider four factors to determine whether the settlement is fair, reasonable, and adequate: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932. The Court "need not make a detailed investigation consonant with trying the case," but must provide a basis for "determining that its decision rests on well-reasoned conclusions and is not mere boilerplate." *Id.* (citations removed). "Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, 'judges should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel.'" *Petrovic v. Amoco Oil, Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citations omitted). "Strong public policy

favors agreements, and courts should approach them with a presumption in their favor." *Id.* (citation and quotation marks removed).

**A. The merits of Plaintiffs' case, weighed against the Settlement Agreement's terms, support final settlement approval.**

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in the settlement. *In re Wireless Tel. Fed. Cost Recovery*, 396 F.3d at 933 (citation and quotation marks removed). This factor weighs strongly in favor of final approval here.

The Collective Class alleges that Defendant failed to properly pay them overtime wages as required under the Fair Labor Standards Act ("FLSA") and Missouri Minimum Wage Law ("MMWL") in two ways. First, Plaintiffs contend that Defendant improperly rounded their time worked at the beginning and end of each shift in a manner than systematically under-counted the amount of time the employees actually worked. Second, Plaintiffs allege that Defendant improperly deducted a 30-minute meal break from each shift, regardless of whether the break in question was taken or whether it was in fact a full 30 minutes. Defendant disputes whether the deducted time was compensable under applicable law, and to the extent some or all of the time may be found compensable, disputes whether and how much of the unpaid time would be considered a violation of the overtime and minimum wage provisions of the FLSA and MMWL.

If the case were to move forward, it carries significant risks for both parties. Plaintiffs' best-case scenario is final class and collective certification, an adverse inference instruction on damages, recovery on the merits of up to 300% of the total calculated unpaid overtime wages under the MMWL, and recovery of attorneys' fees. Plaintiffs' worst-case scenario is that the FLSA Collective and Rule 23 class are not certified, that summary judgment is granted to Defendants, or that Plaintiffs lose at trial. Even if the case were to proceed to trial, substantial questions may

6

remain as to the measure of damages and the entitlement of each class member to recover. Although Plaintiffs believe strongly in their claims, the great number of uncertainties in moving forward toward trial and ultimately calculating class damages make it difficult to predict how a court or jury would consider a reward.

Prior to reaching settlement, the Court conditionally certified Plaintiffs' FLSA Collective Action [Doc. #31]. Additionally, the Parties exchanged a significant amount of written discovery, including Defendant's production of time and payroll records for all its hourly employees during the class period. Both Parties employed expert witnesses to review those time and payroll records and calculate potential damages. While the Parties' expert analyses were not exactly the same, the total settlement of $1,250,000 constitutes more than 100% of the unpaid overtime calculation regardless of which expert opinion is used. Plaintiffs' expert calculated potential damages with the following assumptions: (1) any rounded away time was re-added, such that employees were considered to be working and owed a wage from the minute of clock-in to the minute of clock-out; (2) any breaks shorter than 30 minutes were presumed fully compensable (e.g., an employee who clocked out for a 20 minute break but had 30 minutes auto-deducted for that break, was considered to be owed a wage for the full 30 minutes). With those assumptions, Plaintiff's expert calculated an average number of overtime minutes missed per shift, then extrapolated that over the total number of shifts and across employees. Defendant's experts calculated potential damages by taking the exact times employees clocked in and out, then removing the rounding restrictions Shamrock's original pay system put in. Defendant's experts' calculations thus represent a near-exact amount of overtime to be paid to employees as the exact amount of time they worked in a given workweek. These differences between how the experts calculated damages account for the differences in numbers.

The Net Settlement Fund of $875,000 constitutes 95.7% of calculated class damages using Plaintiff's expert analysis (finding $914,235 in owed overtime) or 148.0% of calculated damages using Defendant's expert analysis including lunch time (finding $591,308.69 in owed overtime). Defendant's estimate with only the rounding time and excluding "meal breaks" totaled $290,174.48, without the times three multiplier from the MMWL applied. Notably, this difference in expert analyses highlights at least one further risk of moving forward, as damages could be found to be lower than Plaintiffs' calculations. Additionally, both Parties' experts broke out their calculations of owed overtime into separate amounts for "meal break" overtime and "rounding" overtime. While the numbers again varied slightly, both Parties found that a large majority of the allegedly unpaid overtime resulted from the meal break issue. As such, Plaintiffs faced a risk that, if they were to lose their claim for unpaid meal breaks as the case progressed, their overall damages would have reduced significantly.

In light of the above, and the potential risks and benefits to Plaintiffs should the case move forward, a recovery of 95.7% of their calculated base damages (or 148%, using Defendant's analysis that included lunch time)[3] is a good result for the Plaintiffs that the Court should find to be fair, reasonable, and adequate.

**B. The Defendant's financial condition supports final settlement approval.**

Defendant's financial condition appears strong and does not present any cause for concern that any judgment may go unsatisfied. "There is no indication that [Defendant's] financial condition would prevent it from raising the settlement amount." *In re Wireless Tel. Fed. Cost Recovery*, 396 F.3d at 933. Here, Defendant deposited the entire agreed settlement amount into a

---

[3] For breakdown of payments to individual class members, the Parties' have agreed to use Defendant's expert calculations. This administrative decision has no effect on the total payout to the class, although it may result in some class members receiving slightly different payouts relative to others as compared against use of the Plaintiffs' expert calculations.

settlement fund with RG/2 on June 14, 2023. As such, this factor weighs strongly in favor of final settlement approval.

### C. The complexity and expense of further litigation supports final settlement approval.

Plaintiffs and Class Counsel recognize the expense and length of continued proceedings that would be necessary to prosecute this litigation through trial and any potential appeals. Prior to reaching this settlement, the Parties exchanged significant written discovery, and Plaintiffs engaged an expert witness and took the deposition of Defendant's sales and drafting manager, Jeremy Beachner. If the case were to proceed, Plaintiffs would need to take several more depositions both of Defendant's management and individual class members. Additionally, Defendants would likely take the depositions of a number of Class Members. As a result, Plaintiffs would likely incur thousands of dollars in additional expense even before a trial, and numerous class members would have to take time off work to attend depositions and trial. Furthermore, the amount of time and attorneys' fees involved would increase significantly as the case went on through discovery, briefing on class certification and summary judgment, trial, and appeal.

Both Class Counsel and Plaintiffs believe in the strength of their claims. However, they have also taken into account the uncertain outcome of continued litigation, as well as the time and expense involved in further discovery, briefing, trial, and appeal. In all, Plaintiffs and Class Counsel view the present settlement as providing significant benefits relative to the time, expense, and uncertainty of continuing with their case. As such, this factor weighs in favor of final settlement approval.

### D. There are no objections to this Settlement, which supports final settlement approval.

No Class Member has filed objections to the settlement agreement in this case, and only one individual opted out (0.5% of the Class). Direct mail notice was sent to every Class Member,

and both RG/2 and Counsel for Plaintiff had follow-up conversations with several Class Members via phone and email discussing the details and logistics of the settlement. That no class members have objected is a testament to the settlement's ultimate fairness. Settlements have been approved where four percent or more of the prospective Class objected. *See Petrovic*, 200 F.3d at 1152 (citing *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988)). Furthermore, Defendant Shamrock timely sent out notices, under the Class Action Fairness Act, to the necessary Attorneys General more than 90 days before this final hearing, and no objections have been filed. [Doc #64]. Here, the lack of any objections weighs strongly in favor of final settlement approval.

***

Because each of the four factors District Courts consider in evaluating a Rule 23 settlement weighs in favor of final approval, Plaintiffs request approval of the settlement agreement and a finding that the Settlement is fair, reasonable, and adequate.

### IV. The FLSA Settlement is a Fair and Equitable Resolution of a Bona Fide Wage and Hour Dispute

To approve an FLSA settlement. Under 29 U.S.C. § 216(b), the Court "must find the matter involves a bona fide wage and hour dispute, and the proposed settlement is fair and reasonable." *Adams v. City of Kansas City*, No. 19cv093, 2022 WL 949815, at *3 (W.D. Mo. March 29, 2022). *See also Krott v. New Directions Behavioral Health, LLC*, No. 19cv915, 2022 WL 130978, at *2 (W.D. Mo. Jan. 13, 2022) (articulating the same standard).

**A. This litigation involves a bona fide wage and hour dispute**

"A bona fide wage dispute exists when an employee and an employer disagree 'with respect to coverage or amount due under the [FLSA].'" *Adams*, 2022 WL 949815, at *3 (quoting *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703 (1945)). As outlined both in Part III.A above and in prior Briefing in support of Conditional Certification [Doc. #27], and Preliminary Settlement Approval

[Doc. #60], the Parties dispute whether Defendant improperly rounded away time worked at both the beginning and end of its hourly employees' shifts, and whether Defendant improperly deducted 30-minute meal breaks from its hourly employees' shifts even when the employees did not take such a break.

Defendant disputes the Plaintiffs' claims for unpaid wages, contending that some or all of the allegedly illegally deducted time was a proper deduction under the FLSA and MMWL, and that it acted in good faith to comply with the law. Plaintiffs contention that the disputed wages are improperly paid is based on FLSA regulations that allow for rounding of employee time "provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate employees properly for all the time they have actually worked," 29 C.F.R. § 785.48, and on Eighth Circuit caselaw that suggests a meal period must be a full 30 minutes to be non-compensable. *See Henson v. Pulaski Cnty. Sheriff Dept.*, 6 F.3d 531, 536 (8th Cir. 1993) (finding that employees had a bona fide meal period where they had a "full thirty minutes to use for their own purposes and in which to travel to any desired location, subject only to the possibility of being recalled in an emergency"); *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 880-81 (8th Cir. 2012) (approving a jury instruction that "ordinarily 30 minutes or more is long enough for a bona fide meal period"). As set forth herein, the Parties continue to dispute whether Defendant violated the FLSA, and if so, the amount of damages they would owe were the case to proceed. As such, a bona fide dispute exists and this factor weighs in support of final approval.

**B. The Settlement is fair and reasonable**

In determining whether the settlement is fair and reasonable, Courts consider several factors,

> including but not limited to (1) the stage of litigation during which the settlement was reached; (2) the complexity, expense, and likely duration of the remaining

> litigation; (3) whether the settlement is the product of arm's length negotiations; and (4) whether the settlement's value outweighs the potential recovery if litigation continues.

*Adams*, 2022 WL 949815, at *3 (citations removed). As discussed in Part III above, this settlement was reached following the exchange of extensive written discovery and the retention of expert analysts by both parties, but prior to the taking of most of the likely depositions, and prior to extensive briefing on class certification or summary judgment. The exchange of significant written discovery, in addition to the deposition that was taken, gave the Parties sufficient information to judge the risks and benefits of proceeding with further litigation relative to this settlement.

During the course of the case, the Parties engaged in two arms-length mediations with an experienced mediator, the Court's Mediation and Assessment Program Director Laurel Stevenson. The case ultimately resolved during post-mediation negotiations between the Parties following the second mediation with Ms. Stevenson. This adversarial process and arms-length negotiation gives the proposed settlement a presumption of fairness. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982) (finding that settlements are "more likely to reflect a reasonable compromise of disputed issues" when they result from adversarial, employee-initiated litigation).

Additionally, the Parties and their Counsel have determined that the settlement's value outweighs the risks and benefits of moving forward with litigation, particularly in light of the uncertainty, expense, and duration of continued proceedings. As outlined in detail above, both Parties would bear a significant amount of risk in moving forward. Additionally, were the case to move forward, a final payout to Class Members would likely be delayed by multiple years as the Parties worked through briefing on summary judgment

and class certification, trial, and appeal. Additionally, the Class Members appear to view the settlement as fair and reasonable, in light of the high opt-in rate and the lack of objections as noted in Part III above. Based on the foregoing, this settlement is fair and reasonable, and this factor weighs in favor of final approval.

***

Because each factor that courts consider in evaluating an FLSA settlement weighs in favor of final approval, Plaintiffs request approval of the settlement agreement and a finding that the Settlement is fair and equitable under the FLSA.

## V.     Conclusion

The settlement presented is an immediate, real, substantial, and fair settlement. Plaintiffs, therefore, respectfully request that the Court grant final Rule 23 approval and FLSA approval of the Settlement Agreement, a finding that the agreement is fair, reasonable, and adequate, and for such other relief as the Court deems just and proper.

Respectfully Submitted:

**HKM EMPLOYMENT ATTORNEYS LLP**

By:     */s/ Kevin A. Todd*
Brad K. Thoenen, MO 59778
bthoenen@hkm.com
John J. Ziegelmeyer III, MO 59042
jziegelmeyer@hkm.com
Kevin A. Todd, MO 73048
ktodd@hkm.com
1501 Westport Road
Kansas City, Missouri 64111
816.875.9339

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 25, 2023, a copy of the foregoing was served via the Court's electronic filing system on all counsel of record.

*/s/ Kevin A. Todd*
Attorney for Plaintiffs